## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| Marble VOIP Partners LLC<br><br>                    Plaintiff,<br><br>    v.<br><br>RingCentral, Inc., Mitel US Holdings Inc., Mitel (Delaware), Inc., and Mitel Networks, Inc.<br><br>                    Defendants. | Case No.<br><br>Jury Trial Demanded |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Marble VOIP Partners LLC ("Plaintiff"), by and through its counsel, files this Complaint against RingCentral, Inc. ("RingCentral"), Mitel US Holdings Inc., Mitel (Delaware), Inc., and Mitel Networks, Inc., (collectively, "Defendants") for infringement of United States Patent No. 7,376,129 (the "'129 Patent" or the "Patent-in-Suit"), and alleges as follows:

## NATURE OF THE ACTION

1.      This is an action for infringement of the Patent-in-Suit arising under the patent laws of the United States, 35 U.S.C. §§ 100, *et seq.* Specifically, this action relates to a patent directed to a method and system for enabling Voice over Internet Protocol ("VoIP") for computer applications.

## PARTIES

2.      Plaintiff Marble VOIP Partners LLC is a domestic limited liability company incorporated under the laws of Texas, having a principal place of business at 3610-2 N Josey, Suite 223, Carrollton, Texas, 75007.

3.     RingCentral is a publicly traded video communications and online media company organized under the laws of Delaware, having a principal place of business at 20 Davis Drive, Belmont, California, 94002. On information and belief, RingCentral has had a registration to do business in Texas since at least January 6, 2020.

4.     RingCentral distributes, sells, and/or imports its products throughout the United States and does business in every state, including Texas, either directly or indirectly.

5.     Mitel US Holdings Inc. is a Delaware corporation with its principal place of business, upon information and belief, at 1146 North Alma School Rd., Mesa, Arizona 85201.  On information and belief, Mitel US Holdings, Inc. entered into a Purchase and Sale Agreement with RingCentral, Inc. on November 8, 2021.

6.     Mitel (Delaware), Inc. is a Delaware corporation with its principal place of business at 1146 North Alma School Rd., Mesa, Arizona 85201. On information and belief, Mitel (Delaware), Inc. has had a registration to do business in Texas since at least March 7, 2019. On information and belief, Mitel (Delaware), Inc. is wholly-owned and operated by Mitel U.S. Holdings, Inc. Mitel (Delaware), Inc. may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, Mitel (Delaware), Inc. is registered to do business in the State of Texas and has been since at least March 7, 2019.

7.     Mitel Networks, Inc. is a Delaware corporation, having a principal place of business at 1146 North Alma School Rd., Mesa, Arizona 85201.  Upon information and belief, Mitel Networks, Inc. is wholly owned and operated by Mitel (Delaware), Inc..

Mitel Networks, Inc. may be served through its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201. On information and belief, Mitel Networks, Inc. is registered to do business in the State of Texas and has been since at least October 3, 2014.

8.     Mitel US Holdings Inc., Mitel (Delaware), Inc., and Mitel Networks, Inc. (collectively, "Mitel") maintains a regular and established place of business in Texas through its office and sales offices located at 6500 River Place Boulevard Building IV, Suite 200, Austin, Texas 78730. Mitel has offices in the Western District of Texas where it sells, develops, and/or markets its products including sales offices in Austin.

9.     Upon information and belief, Mitel distributes, sells, and/or imports products throughout the United States and does business in every state, including Texas, either directly or indirectly.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a) because this is a patent infringement action that arises under the patents laws of the United States, 35 U.S.C. §§ 100 *et seq*.

11.     This Court has specific and general personal jurisdiction over Defendants under due process and/or the Texas Long Arm Statute, because Defendants have committed infringing acts giving rise to this action in Texas and within this judicial district. This Court's exercise of jurisdiction over Defendants would not offend traditional notions of fair play and substantial justice because Defendants have established minimum contacts with this forum. For example, on information and belief, Defendants

have committed acts of infringement in this judicial district by, among other things, selling and offering for sale products that infringe the Patent-in-Suit, directly or through intermediaries, as alleged herein.

12.    Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b), (c), (d) and/or 1400(b) because, among other things, Plaintiff is registered to do business in Texas and maintains a regular and established place of business in this district. Mitel also has an office, including a sales office, where business operations are conducted in this judicial district. Further, upon information and belief, the witnesses and sources of proof necessary for this action are easily accessible in this district.

13.    Mitel has not contested venue in this judicial district in a previous litigation. *See Castle Morton Wireless, LLC v. Mitel Networks Corp.*, 6:20-cv-49-ADA, ECF 19, ¶ 17 (W.D. Tex. Apr. 13, 2020).

## PERSONAL JURISDICTION OVER RINGCENTRAL

14.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

15.    This Court has personal jurisdiction over RingCentral in part because a substantial portion of the events giving rise to the claims alleged in this Complaint, for which RingCentral is responsible, occurred in Texas.

16.    On information and belief, Defendants have manufactured, marketed, and sold the RingCentral Message Video Phone ("MVP") Platform since November 9, 2021; on or about that date, RingCentral became the exclusive "unified communications as a service" ("UCaaS") partner of Mitel in order to provide Defendants' customers a cloud

communications platform and to transition these customers from on-premises Private Branch Exchange ("PBX") systems to the RingCentral MVP platform. *See RingCentral and Mitel Announce Strategic Partnership to Enable Customers to Transition Seamlessly to Cloud-Based Unified Business Communications*, RINGCENTRAL (Nov. 9, 2021), https://www.ringcentral.com/whyringcentral/company/pressreleases/ringcentral-and-mitel-announce-strategic-partnership-to-enable-customers-to-transition-seamlessly-to-cloud-based-unified-business-communications.html, attached as **Exhibit 1**.

17.     RingCentral is also subject to personal jurisdiction of this Court because: (i) RingCentral sells products and services to customers in this judicial district; and (ii) the patent infringement claims also rise directly from RingCentral's continuous and systematic activity in this judicial district.

18.     Specifically, RingCentral's products are sold and used throughout Texas. RingCentral makes, uses, sells, and offers to sell the RingCentral Video Platform within Texas, which is used in Texas by customers. Further, upon information and belief, Mitel's CloudLink technology is integrated within RingCentral's MVP platform and the RingCentral MVP platform is made, sold, and offered to be sold within Texas and used in Texas by its customers. Each of these activities constitutes direct and indirect infringement of the Patent-in-Suit in Texas.

19.     Therefore, RingCentral purposefully availed itself of the privileges of conducting business in Texas and within this judicial district; established sufficient minimum contacts in Texas and within this judicial district such that it should reasonably

and fairly anticipate being subject to litigation in Texas and in this judicial district; purposefully directed activities towards Texas residents and this judicial district; and resulted in at least a portion of the patent infringement claims alleged herein, which arise out of or are related to one or more of the foregoing activities.

20.    Accordingly, this Court has personal jurisdiction over RingCentral, which (i) has committed acts of patent infringement in Texas and within this judicial district alone and in partnership with Mitel; (ii) has substantial, regularly conducted, and systematic business contacts in Texas and within this judicial district, alone and in partnership with Mitel; (iii) owned, managed, and marketed products in Texas and within this judicial district alone and in partnership with Mitel; and (iv) enjoys substantial income from selling products in Texas and within this judicial district, alone and in partnership with Mitel.

## PERSONAL JURISDICTION OVER MITEL

21.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

22.    This Court has personal jurisdiction over Mitel because Mitel has committed acts within the Western District of Texas giving rise to this action and has established minimum contacts with this forum such that the exercise of jurisdiction over Mitel would not offend traditional notions of fair play and substantial justice. Mitel, directly and/or through subsidiaries or intermediaries (including distributors, retailers, and others), has committed and continues to commit acts of infringement in this District by, among other things, offering to sell and selling products and/or services that infringe

the patent-in-suit. Moreover, Mitel has offices and facilities in the State of Texas, and actively directs its activities to customers located in the State of Texas.

23.     A substantial portion of the events giving rise to the claims alleged in this Complaint, for which Mitel is responsible, occurred in Texas. For example, Mitel manufactures, markets, and sells the Mitel SIP-DECT system. Additionally, Mitel, in partnership with RingCentral, manufactures, markets, and sells the RingCentral MVP platform; Mitel's CloudLink Technology platform is integrated with the RingCentral MVP platform. Each of these activities constitutes direct and indirect infringement of the Patent-in-Suit in Texas.

24.     On information and belief, Mitel and RingCentral have manufactured, marketed, and sold the RingCentral MVP Platform since November 9, 2021; on or about that date, RingCentral became the exclusive "unified communications as a service" ("UCaaS") partner of Mitel in order to provide Defendants' customers a cloud communications platform and to transition these customers from on-premises Private Branch Exchange ("PBX") systems to the RingCentral MVP platform. *See* **Exhibit 1**.

25.     Mitel is also subject to personal jurisdiction of this Court because: (i) Mitel maintains a regular and established place of business in this judicial district at 6500 River Place Boulevard Building IV, Suite 200, Austin, Texas 78730; (ii) Mitel sells products and services to customers in this judicial district; (iii) Plaintiff's patent infringement claims arise directly from Mitel's continuous and systematic activity in this judicial district; and (iv) Mitel actively employs and seeks the services of Texas residents in this judicial district.

26.     Specifically, Mitel's products are sold and used throughout the United States, including Texas. Mitel makes, uses, sells, and offers to sell the SIP-DECT with Cloud-ID system (collectively, the "SIP-DECT system") within Texas, which is used in Texas by customers. Further, upon information and belief, Mitel's CloudLink technology is integrated within RingCentral's MVP platform and the RingCentral MVP platform is made, sold, and offered to be sold within Texas and used in Texas by its customers. Each of these activities constitutes direct and indirect infringement of the Patent-in-Suit in Texas.

27.     Further, Mitel admitted that personal jurisdiction was proper in this judicial district in a previous patent infringement case. *See Castle Morton Wireless*, 6:20-cv-49-ADA, ECF 19 ¶¶ 11-14, 16-17.

28.     Therefore, Mitel purposefully availed itself of the privileges of conducting business in Texas and within this judicial district; established sufficient minimum contacts in Texas and within this judicial district such that it should reasonably and fairly anticipate being subject to litigation in Texas and in this judicial district; purposefully directed activities towards Texas residents and this judicial district; and resulted in at least a portion of the patent infringement claims alleged herein, which arise out of or are related to one or more of the foregoing activities.

29.     Accordingly, this Court has personal jurisdiction over Mitel, which, on information and belief: (i) has committed acts of patent infringement in Texas and within this judicial district alone and in partnership with RingCentral; (ii) has substantial, regularly conducted, and systematic business contacts in Texas and within this judicial

district, alone and in partnership with RingCentral; (iii) owned, managed, and marketed products in Texas and within this judicial district alone and in partnership with RingCentral; and (iv) enjoys substantial income from selling products in Texas and within this judicial district, alone and in partnership with RingCentral.

## JOINDER OF RINGCENTRAL AND MITEL

30.    Plaintiff incorporates each of the preceding paragraphs by reference as if fully set forth herein.

31.    Mitel and RingCentral are properly joined as parties under 35 U.S.C. § 299, because Mitel and RingCentral agreed to integrate RingCentral's MVP Platform with Mitel's CloudLink Technology platform in order to transition users from on-premises PBX systems to RingCentral's MVP platform. **Exhibit 1**.

32.    As a result, any right to relief Plaintiff seeks with regard to the MVP Platform must be asserted against all Defendants. *See* 35 U.S.C. § 299(a).

33.    Further, the actions Defendants took before and after entering into the November 9, 2021 Agreement are common to all Defendants. *See* 35 U.S.C. § 299(b).

34.    Accordingly, joinder of all Defendants is proper because: (1) Plaintiff seeks relief against all Defendants for the MVP Platform's infringement of the '129 Patent; and (2) all actions taken by Defendants before and after entering into the November 9, 2021 partnership agreement are common questions of fact.

## BACKGROUND

### The Patent-in-Suit

35.    Dr. Arup Acharya is the first-named inventor of the Patent-in-Suit. *See* United States Patent No. 7,376,129, attached as **Exhibit 2**.

36.    Dr. Acharya has an undergraduate degree in Computer Science from the Indian Institute of Technology Kharagpur, and a Ph.D. in Computer Science from Rutgers University.

37.    Dr. Acharya has conducted research in Computer Science for over 20 years and is currently the Head of Research and Innovation at TCS Digital Software & Solutions.

38.    Dr. Acharya also holds multiple U.S. patents in the field of Session Initiation Protocol ("SIP") based Voice over Internet Protocol ("VoIP") technology.

39.    The rights to patent application number 10/695,856, which issued as the Patent-in-Suit, were assigned to International Business Machines Corporation ("IBM") by Dr. Acharya and the other inventors and recorded on October 29, 2003, the patent application's filing date; during this time, Dr. Acharya was an employee of IBM, a foremost leader in technology.

40.    Session Initiation Protocol ("SIP") has emerged as a vehicle to enable VoIP, and both enterprise networks and service provider networks are using SIP as a vehicle to enable VoIP in enterprise and carrier networks. *See* Exhibit 2 at 1:11-24.

41.    While SIP support is bundled with individual applications, such as an Instant Message ("IM") client or an IP softphone, individual applications must support

SIP themselves. This is problematic; since each application is separate, no other application can use a port another application is using. Thus, there was a need for desktop applications to invoke SIP uniformly. Further, there was a need for a framework that could enable applications with VoIP through SIP. *Id*. at 1:29-43.

42.    There were significant disadvantages to using SIP; each individual application had its own SIP, which wasted resources and created conflicts when multiple applications attempted to use the same port. *Id*. at 1:29-37.

43.    The invention claimed in the Patent-in-Suit provides a framework for enabling applications to use SIP-based VoIP; the framework makes SIP a recognizable protocol at a system level and provides a protocol handler available to all applications on the system. *Id*. at 2:30-38.

44.    Thus, the claimed invention solved the problems found in the prior art through strong coupling of the SIP infrastructure and collaborative applications; this solution reduced the time to create voice calls, allowed applications to use native SIP capabilities previously lost upon injection of additional layers/components between applications and SIP, enhanced efficiency, and strengthened the system, because only the SIP infrastructure, including protocols and servers, were needed. *Id*. at 3:9-17.

## United States Patent No. 7,376,129

45.    U.S. Patent No. 7,376,129, titled "Enabling Collaborative Applications Using Session Initiation Protocol (SIP) Based Voice Over Internet Protocol Networks VOIP," was duly and legally issued on May 20, 2008. *See* Exhibit 2.

46.     The named inventors on the '129 Patent are Arup Acharya, Dilip Dinkar Kandlur, Priya Mahadevan, Zon-yin Shae, and Aameek Singh.

47.     The '129 Patent will expire at least as early as May 5, 2026, per the 35 U.S.C. § 154(b) patent term adjustment.

48.     The '129 Patent claims a method and system for enabling voice over Internet for computer applications.

49.     The claims of the '129 Patent are valid, enforceable, and active.

50.     All rights, title and interests in the '129 Patent are owned by and assigned to Marble VOIP Partners LLC.

**Defendants' MVP Platform**

51.     Defendants make, use, sell, offer to sell, and/or import the MVP platform throughout the United States, which uses Voice Over Internet Protocol ("VOIP") for computer applications. *VOIP Phone Service – How It Works for Your Business*, RINGCENTRAL (last visited Feb. 24, 2022), https://www.ringcentral.com/voip-services.html#ring-s, attached as **Exhibit 3**.

52.     Further, Defendants' MVP platform registers SIP and supports SIP-connected-audio that allows telephone users to participate in RingCentral meetings by establishing a SIP trunk. Further, the RingCentral platform allows users to call-in and call-out to meetings, and designate calls to and from certain countries. *See Getting the SIP settings for manual provisioning | RingCentral MVP*, RINGCENTRAL (last visited Feb. 22, 2022), https://support.ringcentral.com/article/Manual-Provisioning-How-get-SIP-Settings.html, attached **Exhibit 4**.

**RingCentral's Video Platform**

53.    RingCentral makes, sells, and distributes the RingCentral Video platform throughout the United States, which allows users to schedule and create meetings using VoIP. *See Scheduling a RingCentral Video meeting or RingCentral Meetings session via Google calendar*, RINGCENTRAL (last visited Feb 24, 2022), https://support.ringcentral.com/video/joining-scheduling/scheduling-ringcentral-video-meeting-via-google-calendar.html attached as **Exhibit 5**.

54.    Further, the RingCentral Video platform generates SIP information in meeting invitations so users can join a RingCentral Video meeting from multiple platforms. *See Intro to RingCentral Video*, RINGCENTRAL (last visited Feb. 18, 2022), https://support.ringcentral.com/video/overview/intro-ringcentral-video.html, attached as **Exhibit 6**.

**Mitel's SIP-Digital Enhanced Cordless Telecommunications ("SIP-DECT") System**

55.    Mitel make, sell, and distribute the SIP-DECT system throughout the United States, which utilizes VoIP for computer applications. *See Mitel SIP-DECT*, MITEL, at p. 1 (last visited Feb. 24, 2022), https://www.voipinfo.net/docs/mitel/SIP-DECT%20Brochure-500893-R1601-EN-NA.pdf, attached as **Exhibit 7**. Further, Mitel's SIP-DECT system allows users to configure SIP settings. *See id*. at p. 2.

**RingCentral's Notice of the Patent-in-Suit**

56.    RingCentral received notice of the Patent-in-Suit when Plaintiff sent correspondence on March 9, 2022 via Overnight Federal Express, which was received on March 10, 2022, to RingCentral's Chief Executive Officer, Vlad Shmunis, and informed

him of the '129 Patent's and RingCentral's infringement of the Patent-in-Suit. *See* RingCentral Notice Letter and delivery confirmation, collectively attached as **Exhibit 8**.

57.    Plaintiff's Notice Letter instructed RingCentral to immediately cease and desist from engaging in any further activity that would infringe the '129 Patent. On information and belief, RingCentral has not altered its conduct in response to Plaintiff's Notice Letter.

58.    Further, on information and belief, at a time prior to March 10, 2022, employees of RingCentral read, in whole or in part, the Patent-in-Suit.

59.    On information and belief, at a time prior to March 10, 2022, RingCentral has actual knowledge of the Patent-in-Suit.

60.    On information and belief, at a time prior to March 10, 2022, RingCentral had actual knowledge of the Patent-in-Suit through their monitoring of patents through their ordinary course of business.

61.    RingCentral has therefore induced infringement of the Patent-in-Suit in violation of 35 USC § 271(b), by providing to the public, at a minimum, the MVP Platform and the RingCentral Video platform, along with instructions for using these software platforms to the public, in a manner that directly infringes the Patent-in-Suit.


### Mitel's Notice of the Patent-in-Suit

62.    Mitel received notice of the Patent-in-Suit when Plaintiff sent correspondence on March 9, 2022 via Overnight Federal Express, which was received on March 10, 2022, to Mitel's Chief Executive Officer, Tarun Loomba, and informed him of

the '129 Patent's existence and Mitel's infringement of the Patent-in-Suit. *See* Mitel Notice

Letters and delivery confirmation, collectively attached as **Exhibit 9**.

63.    Plaintiff's Notice Letter instructed Mitel to immediately cease and desist

from engaging in any further activity that would infringe the '129 Patent. On information

and belief, Mitel has not altered its conduct in response to Plaintiff's Notice Letter.

64.    Further, on information and belief, at a time prior to March 10, 2022,

employees of Mitel read, in whole or in part, the Patent-in-Suit.

65.    On information and belief, at a time prior to March 10, 2022, Mitel has actual

knowledge of the Patent-in-Suit.

66.    On information and belief, at a time prior to March 10, 2022, Mitel had

actual knowledge of the Patent-in-Suit through their monitoring of patents through their

ordinary course of business.

67.    Mitel has therefore induced infringement of the Patent-in-Suit in violation

of 35 USC § 271(b), by providing to the public, at a minimum, the SIP-DECT and the MVP

platform, along with instructions for using these products to the public, in a manner that

directly infringes the Patent-in-Suit.

## PATENT INFRINGEMENT

## Count I: Infringement of United States Patent No. 7,376,129: RingCentral's and Mitel's MVP Platform

68.    Plaintiff incorporates each of the preceding paragraphs as if fully set forth

herein.

69.     On information and belief, and without authority, consent, right, or license, Defendants make, use, sell, offer to sell and/or import the MVP platform in the United States. In doing so, RingCentral and Mitel infringe one or more claims, including claims 1-31 of the '129 Patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing the MVP platform. Through these activities, RingCentral and Mitel also actively induce infringement by others under § 271(b) by at least providing to the public the MVP platform, and directions instructing users how to use the MVP platform in a manner that directly infringes the '129 Patent.

70.     Defendants commit acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the MVP platform.

71.     For example, claim 22 of the '129 Patent claims:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method comprising:

registering session initiation protocol (SIP) as a system service;

providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and

passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

72.     Defendants' MVP platform meets the claim element "A program storage device readable by machine, tangibly embodying a program of instructions executable

by the machine to perform method steps for enabling voice over Internet for computer applications. . ." For example, Defendants' MVP platform uses Voice over Internet Protocol ("VoIP") for computer applications through an integrated cloud communications platform. *See* **Exhibit 3**.

73.     Defendants' MVP platform meets the claim element "registering session initiation protocol (SIP) as a system service" because the MVP platform supports SIP-connected audio that allows telephone users to participate in RingCentral meetings through establishment of a SIP trunk. Further, the RingCentral platform allows users to call-in and call-out to meetings, and designate calls to and from certain countries. *See* **Exhibit 4**; *see also Device SIP Registration,* RINGCENTRAL (last visited Feb. 24, 2022), https://developers.ringcentral.com/api-reference/Device-SIP-Registration/createSIPRegistration, attached as **Exhibit 10**.

74.     Defendants' MVP platform meets the claim element "providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select SIP links to enable voice over Internet service within the software application. . ." through a Voice API embedding voice and phone capabilities into applications to make and receive VoIP calls using SIP. *See Programmable Voice API,* RINGCENTRAL (last visited Feb. 24, 2022), https://developers.ringcentral.com/voice-api, attached as **Exhibit 11**; *see also RingCentral Office API Reference Index,* RINGCENTRAL (last visited Feb. 14, 2022), https://developers.ringcentral.com/guide/basics/api-index, attached as **Exhibit 12**.

75.    Further, Defendants' MVP platform recognizes SIP links, highlights the SIP links, and allows users to select SIP links to enable VoIP link by providing a URL associated with a phone number saved in the RingCentral platform or a registered SIP URL in order to allow users to join the RingCentral meeting through a link; the SIP key is in the link address of the RingCentral meeting invitation. *See HD Video Conferencing with RingCentral MVP™*, RingCentral (last visited Feb. 24, 2022), https://www.ringcentral.com/office/features/video-conference/overview.html, attached as **Exhibit 13**.

76.    Defendants' MVP platform meets the claim element "passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application." For example, when a RingCentral user clicks a SIP link in a RingCentral invitation, the link is passed to RingCentral as a parameter to permit external access to an invoked service function that provides voice communication capabilities for the software application. *See id.*

77.    Thus, because the MVP platform meets all the claim limitations of claim 22, Defendants violate 35 U.S.C. § 271(a) by directly infringing one or more claims of the '129 Patent.

78.    Defendants, acting without authority, consent, right, or license of the '129 patent, have induced, and continue to induce, consumers to use the MVP platform in a manner that directly infringes one or more claims of the '129 Patent resulting in conduct that constitutes, at a minimum, induced patent infringement under 35 U.S.C. § 271(b) and/or contributory infringement under § 271(c). Specifically, consumers directly

infringe (literally and/or under the doctrine of equivalents) at least claims 1 -31 of the '129 Patent by using the MVP platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

79.    At least as of the date of receipt of the Notice Letters, (*see* **Exhibits 8 & 9**) Defendants knew of the '129 Patent, knowingly induced use by consumers by keeping the MVP platform in the marketplace and the stream of commerce, and possessed a specific intent to encourage direct infringement of the '129 Patent by failing to remove at least the MVP platform from the stream of commerce.

80.    Defendants possessed, and continue to possess, specific intent to induce infringement of the '129 Patent by at least providing to the public, at a minimum, product specifications and the option to purchase and/or use the MVP platform, which directly infringes the '129 Patent.

81.    Defendants have actively induced and encouraged, and continue to actively induce and encourage, consumers to use the MVP platform by marketing, promoting and advertising the use of the MVP platform in an infringing manner.

82.    Upon information and belief, Defendants know that the MVP platform is especially made or adapted for use in a manner that infringes the '129 Patent, that the MVP platform is not a staple article or commodity of commerce, and that the MVP platform is not suitable for substantial non-infringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, consumers directly infringe (literally and/or under the doctrine of

equivalents) at least claims 1-31 of the '129 Patent by using the MVP platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

83.     Defendants' foregoing actions constitute and/or will constitute direct infringement, active inducement of infringement, and contribution, by others, to the infringement of the '129 Patent.

84.     Plaintiff reserves the right to assert additional claims of the '129 Patent that Defendants infringe.

85.     Plaintiff has been damaged because of Defendants' infringing conduct. Defendants are thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Defendants' infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## Count II: Infringement of United States Patent No. 7,376,129: RingCentral's Video Platform

86.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

87.     On information and belief, and without authority, consent, right, or license, RingCentral makes, uses, sells, offers to sell and/or imports the RingCentral Video platform in the United States. In doing so, RingCentral infringes one or more claims, including claims 1-31 of the '129 Patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing the RingCentral Video platform. Through these activities, RingCentral also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum,

the RingCentral Video platform and directions instructing users how to use RingCentral

Video in a manner that directly infringes the '129 Patent.

88.    RingCentral commits acts of patent infringement by manufacturing, using,

offering for sale, selling and/or importing at least the RingCentral Video platform.

89.    For example, claim 22 of the '129 Patent claims:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method comprising:

registering session initiation protocol (SIP) as a system service;

providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and

passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

90.    RingCentral's Video platform meets the claim element "A program storage

device readable by machine, tangibly embodying a program of instructions executable

by the machine to perform method steps for enabling voice over Internet for computer

applications" because Ring's Video Platform allows users to schedule and create

meetings using VoIP. *See* **Exhibit 5**.

91.    Upon information and belief, RingCentral utilizes cloud technologies as

well as data centers with serves which perform and deliver the RingCentral Video

platform.

21

92.    RingCentral's Video platform meets the claim element "registering session initiation protocol (SIP) as a system service" because the RingCentral Video platform generates SIP information in meeting invitations so users can join a RingCentral Video meeting from multiple platforms. *See* **Exhibit 6**.

93.    RingCentral's Video platform meets the claim element "providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications…" because RingCentral's Video platform utilizes a Voice API, embedding voice and phone capabilities into applications to make and receive VoIP calls using SIP. *See* **Exhibits 11 & 12**.

94.    RingCentral's Video platform meets the claim element "providing a SIP link within a software application to permit user invocation of SIP service functions to enable voice over Internet service within the software application …" because RingCentral Video platform permits users to create a meeting link URL that others may click to join the meeting. *See e.g., Admin Guide for Upgrading Your RingCentral Experience*, RINGCENTRAL (last visited Feb. 24, 2022), https://support.ringcentral.com/transition-to-rcv/admin.html, attached as **Exhibit 14**.

95.    RingCentral's Video platform meets the claim element "passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application" because a RingCentral user clicks a SIP link in a RingCentral invitation, the link is passed to RingCentral as a parameter so a user can join a meeting and receive voice communications through

RingCentral Voice. *See* **Exhibit 14**. See also, *RingCentral Video: Joining Video Meetings*, (last visited Feb. 24, 2022), https://support.ringcentral.com/transition-to-rcv/admin.html .

96.    Thus, because the RingCentral Video platform meets all the claim limitations of claim 22, RingCentral violates 35 U.S.C. § 271(a) by directly infringing one or more claims of the '129 Patent.

97.    RingCentral, acting without authority, consent, right, or license of the '129 patent, has induced, and continues to induce, consumers to use the RingCentral Video platform in a manner that directly infringes one or more claims of the '129 Patent, resulting in conduct that constitutes, at a minimum, induced patent infringement under 35 U.S.C. § 271(b) and/or contributory infringement under § 271(c). Specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) at least claims 1 -31 of the '129 Patent by using the RingCentral Video platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

98.    At least as of the receipt date of the Notice Letter, *see* **Exhibit 8**, RingCentral knew of the '129 Patent, knowingly induced use by consumers by keeping the RingCentral Video platform in the marketplace and the stream of commerce, and possessed a specific intent to encourage direct infringement of the '129 Patent by failing to remove at least the RingCentral Video platform from the stream of commerce.

99.    RingCentral possessed, and continues to possess, specific intent to induce infringement of the '129 Patent by at least providing to the public product specifications and the option to purchase and/or use the RingCentral Video platform which directly infringes the '129 Patent.

100.    RingCentral has actively induced and encouraged, and continues to actively induce and encourage, consumers to use the RingCentral Video platform by marketing, promoting and advertising the use of the RingCentral Video platform in an infringing manner.

101.    Upon information and belief, RingCentral knows that the RingCentral Video platform is especially made or adapted for use in a manner that infringes the '129 Patent, is not a staple article or commodity of commerce, and is not suitable for substantial non-infringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) at least claims 1-31 of the '129 Patent by using the RingCentral Video platform, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

102.    RingCentral's foregoing actions constitute and/or will constitute direct infringement, active inducement of infringement, and contribution, by others, to the infringement of the '129 Patent.

103.    Plaintiff reserves the right to assert additional claims of the '129 Patent that RingCentral infringes.

104.    Plaintiff has been damaged because of RingCentral's infringing conduct. RingCentral is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for RingCentral's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

**Count III: Infringement of United States Patent No. 7,376,129: Mitel's SIP-DECT[1]**

105.     Plaintiff incorporates each of the preceding paragraphs as if fully set forth herein.

106.     On information and belief, and without authority, consent, right, or license, Mitel makes, uses, sells, offers to sell and/or imports the SIP-DECT system in the United States. In doing so, Mitel infringes one or more claims, including claims 1-31 of the '129 Patent under § 271(a), either literally or under the doctrine of equivalents, by making, using, offering to sell, selling and/or importing the SIP-DECT system. Through these activities, Mitel also actively induces infringement by others under § 271(b) by at least providing to the public, at a minimum, the SIP-DECT system and directions instructing users how to use the SIP-DECT system in a manner that directly infringes the '129 Patent.

107.     Mitel commits acts of patent infringement by manufacturing, using, offering for sale, selling and/or importing at least the SIP-DECT system.

108.     For example, claim 22 of the '129 Patent claims:

A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications, the method comprising:

registering session initiation protocol (SIP) as a system service;

providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application; and

---

[1] "SIP–Digital Enhanced Cordless Telecommunications"

passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application.

109. Mitel's SIP-DECT system meets the claim element "A program storage device readable by machine, tangibly embodying a program of instructions executable by the machine to perform method steps for enabling voice over Internet for computer applications. . ." as evidenced by its advertisements for the SIP-DECT which describe enabling VOIP services for computer application in order to gain its benefits of VOIP in addition to DECT. *See* **Exhibit 7**; *See also, SIP-DECT with Cloud-ID System Manual,* MITEL, at pp. 34, 83, 170 (last visited Feb. 24, 2022), https://www.mitel.com/document-center/devices-and-accessories/wireless-solutions-and-handsets/sip-dect-multi-cellular-solution/sip-dect/8,-d-,3sp1/en/sip-dect-with-cloud-id-system-manual, attached as **Exhibit 15**.

110.    Mitel's SIP-DECT system meets the claim element "registering session initiation protocol (SIP) as a system service" because SIP-DECT's manual describes registering SIP services. *See "SIP Features,"* **Exhibit 15**, at p. 54; *see also See* **Exhibit 7**.

111.    Mitel's SIP-DECT system meets the claim element "providing SIP service through an application programming interface (API) to permit access to service functions by individual software applications by recognizing SIP links within the application and highlighting the SIP link in a user interface of the application to permit users to select the SIP links to enable voice over Internet service within the software application . . ." because the SIP-DECT product, through the XML Interface and XML API Connector, permits

access to service functions by individual software applications. *See* **Exhibit 7**. For example, the XML API allows SIP-DECT users to access third-party server apps through the Open Mobility Application XML Interface (OM XMI), including a Mitel Alarm server, an external Alarm server, an external messaging solution server, and a Locating server. *Id.*; *see also* **Exhibit 15**, at pp. 183-84.

112. Further, the SIP-DECT system provides a SIP link within the XML application to allow users to invoke SIP service functions and enable VoIP services within the software application. *See SIP-DECT Phone Sharing and Provisioning*, Mitel, at p. 28 (last visited Feb. 24, 2022), https://dl.businesscom.nl/Mitel/DECT/OMM%20SIP-DECT/8.1/Documentatie/SIP-DECT%20Phone%20Sharing%20and%20Provisioning%20Guide.pdf, attached as **Exhibit 16**. For example, the SIP-DECT allows users to provide a SIP link through a URL if the conference server type is External; doing so provides SIP-centralized conferences and invokes VOIP services on the SIP-DECT, including signaling and voice data encryption. *See SIP-DECT OM System Manual Administration Guide*, Mitel, at pp. 23, 291-92 (last visited Feb. 24, 2022), https://dl.businesscom.nl/Mitel/DECT/OMM%20SIP-DECT/8.1/Documentatie/SIP-DECT%20OM%20System%20Manual.pdf, attached as **Exhibit 17**.

113. Mitel's SIP-DECT system meets the claim element "passing the link as a parameter to permit external access to an invoked service function to provide voice communication capabilities for the software application." For example, when SIP-DECT users access the external server through the SIP URL, the link is passed as a parameter to

permit external access to invoked service functions, such as VOIP encryption, in order to enable voice communications for the SIP-DECT. *See* **Exhibits 16 & 17.**

114.    Thus, because the SIP-DECT system meets all the claim limitations of claim 22, Mitel violates 35 U.S.C. § 271(a) by directly infringing one or more claims of the '129 Patent.

115.    Mitel, acting without authority, consent, right, or license of the '129 Patent, has induced, and continues to induce, consumers to use the SIP-DECT in a manner that directly infringes one or more claims of the '129 Patent resulting in conduct that constitutes, at a minimum, induced patent infringement under 35 U.S.C. § 271(b) and/or contributory infringement under § 271(c). Specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) at least claims 1 -31 of the '129 Patent by using the SIP-DECT system, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

116.    At least as of the date of receipt of the Notice Letter, *see* Exhibit 9, Mitel knew of the '129 Patent, knowingly induced the use by consumers by keeping the SIP-DECT system in the marketplace and the stream of commerce, and possessed a specific intent to encourage direct infringement of the '129 Patent by at least failing to remove the SIP-DECT system from the stream of commerce.

117.    Mitel possessed, and continues to possess, specific intent to induce infringement of the '129 Patent by at least providing to the public, at a minimum, product specifications and the option to purchase and/or use the SIP-DECT system, which directly infringes the '129 Patent.

118.    Mitel has actively induced and encouraged, and continues to actively induce and encourage, consumers to use the SIP-DECT system by marketing, promoting and advertising the use of the SIP-DECT system in an infringing manner.

119.    Upon information and belief, Mitel knows that the SIP-DECT system is especially made or adapted for use in a manner that infringes the '129 Patent, is not a staple article or commodity of commerce, and is not suitable for a substantial non-infringing use, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(c). More specifically, consumers directly infringe (literally and/or under the doctrine of equivalents) at least claims 1-31 of the '129 Patent by using the SIP-DECT system, resulting in conduct that constitutes, at a minimum, patent infringement under 35 U.S.C. § 271(a).

120.    Mitel's foregoing actions constitute and/or will constitute direct infringement, active inducement of infringement, and contribution, by others, to the infringement of the '129 Patent.

121.    Plaintiff reserves the right to assert additional claims of the '129 Patent that Mitel infringes.

122.    Plaintiff has been damaged because of Mitel's infringing conduct. Mitel is thus liable to Plaintiff in an amount that adequately compensates Plaintiff for Mitel's infringement, which, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff requests a trial by jury on all issues so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests the Court to enter judgment in its favor and against Defendants as follows:

a. finding that Defendants have infringed, contributed to and induced infringement of one or more claims of the Patent-in-Suit;

b. awarding Plaintiff damages under 35 U.S.C. § 284, or otherwise permitted by law, and damages for any continued post-verdict infringement;

c. awarding Plaintiff damages for the unjust enrichment of Defendants;

d. awarding Plaintiff pre-judgment and post-judgment interest on the damages award and costs;

e. declaring this case exceptional pursuant to 35 U.S.C. § 285;

f. awarding costs of this action and attorney fees pursuant to 35 U.S.C. § 285, or as otherwise permitted by the law; and

g. awarding such other costs and further relief the Court determines to be just and equitable.

Dated: March 10, 2022                    Respectfully submitted,

                                         /s/ Joseph M. Abraham
                                         Joseph M. Abraham
                                         FOLIO LAW GROUP PLLC
                                         13492 Research Blvd., Ste. 120, No. 177

Austin, TX 78750
(737) 234-0201
Joseph.abraham@foliolaw.com


Of Counsel:

Christopher J. Belter (*pro hac vice pending*)
Michael A. Siem (*pro hac vice pending*)
Michael J. Barresi (*pro hac vice pending*)
GOLDBERG SEGALLA LLP
cbelter@goldbergsegalla.com
msiem@goldbergsegalla.com
mbarresi@goldbergsegalla.com
711 Third Avenue, Suite 1900
New York, New York 10017
Telephone: (646) 292-8700

*Attorneys for Plaintiff*
*Marble VOIP Partners LLC*