**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | | |
|---|---|---|
| **MARBLE VOIP PARTNERS LLC,** *Plaintiff* | § § § § § § § § § § § § § | |
| **-vs-** | | **W-22-CV-00259-ADA** |
| **RINGCENTRAL, INC.,** *Defendant* | | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant RingCentral, Inc.'s ("RingCentral") Motion to Dismiss Marble VOIP Partners LLC's ("Marble") Amended Complaint for Improper Venue or, In the Alternative, to Transfer to the Northern District of California. ECF No. 90. Plaintiff Marble filed a response to the motion, ECF No. 92, and RingCentral filed a reply in support of its motion, ECF No. 97. After careful consideration of the briefing and the applicable law, the Court **DENIES** Defendant's Motion to Dismiss for Improper Venue or, In the Alternative, to Transfer to the Northern District of California.

## I. BACKGROUND

On March 10, 2022, Marble filed its Original Complaint against RingCentral alleging infringement of United States Patent No. 7,376,129 (the "'129 patent" or the "asserted patent"). ECF No. 1 at 1. Marble is a limited liability company incorporated under Texas law with a principal place of business in Carrollton, Texas. *Id.* ¶ 2. RingCentral is a corporation organized under Delaware law with a principal place of business in Belmont, California. *Id.* ¶ 3. Marble accuses of infringement RingCentral's MVP Platform "in partnership with Mitel." ECF No. 58 ¶ 3. Mitel was previously a defendant in this case, but has since been dismissed. ECF No. 77. Marble also accuses RingCentral's Video Platform of infringement. ECF No. 58 ¶ 20.

RingCentral's MVP Platform and Video Platform will be referred to collectively as the "accused products."

On May 16, 2022, RingCentral filed its First Motion to Dismiss for Improper Venue or, in the Alternative, to Transfer Venue to the Northern District of California ("NDCA"). ECF No. 26. On May 20, 2022, Marble filed a Notice of Intent to Proceed with Venue Discovery, which stated that venue discovery would conclude by July 25, 2022. ECF No. 27. On August 2, 2022, the parties filed a Notice of Agreed Extension, notifying the Court that the parties agreed to extend the deadline for venue discovery to September 9, 2022. ECF No. 53.

On September 30, 2022, Marble filed an Amended Complaint. ECF No. 58. In its Amended Complaint, Marble alleges for the first time that RingCentral maintains a regular and established place of business through its office located in Austin, Texas. *Id.* ¶ 4. The parties agree that RingCentral's Austin office was originally leased on August 1, 2022, approximately five months after the Original Complaint was filed. ECF No. 90 at 10; ECF No. 92 at 4. Also on September 30, 2022, Marble filed its opposition to RingCentral's First Motion to Dismiss. ECF No. 59. RingCentral filed its reply in support of its First Motion to Dismiss on October 14, 2022. ECF No. 63.

On December 8, 2022, Marble filed a Notice of Dismissal Without Prejudice and Mootness. ECF No. 73. In the notice, Marble explains that it dismissed a later-filed case against RingCentral. *Id.* at 1. Further, Marble argues in the notice that RingCentral's First Motion to Dismiss is moot in view of Marble's Amended Complaint. *Id.* at 3. On December 12, 2022, RingCentral filed a response to Marble's Notice of Dismissal Without Prejudice and Mootness. ECF No. 74. In its response, RingCentral argues that its First Motion to Dismiss is not moot in view of the Amended Complaint because "[i]t is well-established that venue is determined solely

by those facts that existed when the suit was first initiated—and that post-filing changes to the parties' circumstances are irrelevant." *Id.* at 2.

On January 12, 2023, RingCentral filed a Motion for Leave of Court to File a Motion to Dismiss Plaintiff's Amended Complaint for Improper Venue. ECF No. 80. On January 17, 2023, Marble filed its response to RingCentral's Motion for Leave. ECF No. 81. RingCentral filed a reply in support of its motion on January 23, 2023. ECF No. 82. On April 3, 2023, the Court granted RingCentral's Motion for Leave. RingCentral subsequently filed the instant motion on April 3, 2023. ECF No. 90. Marble filed its response in opposition on April 17, 2023. ECF No. 92. RingCentral filed its reply in support of its motion on May 1, 2023. ECF No. 97.

## II. LEGAL STANDARD

### A. Patent Venue

Section 1400(b) of title 28 of the United States Code "constitute[s] the exclusive provision controlling venue in patent infringement proceedings." *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258, 265 (2017) (internal quotation marks omitted). A claim for patent infringement must be brought "in the judicial district where the defendant resides" or "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *see also Optic153 LLC v. Thorlabs Inc.*, No. 6:19-CV-00667-ADA, 2020 WL 3403076, at *2 (W.D. Tex. June 19, 2020). Section 1400(b) is intentionally restrictive, and it is the plaintiff's burden to establish proper venue. *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013–14 (Fed. Cir. 2018).

Under the first prong, the Supreme Court has held: "As applied to domestic corporations, 'reside[nce]' in § 1400(b) refers only to the State of incorporation." *TC Heartland*, 581 U.S. at 270. Under the second prong, the Federal Circuit interpreted a "regular and established place of

business" to impose three general requirements: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant." *In re Cray Inc.,* 871 F.3d 1355, 1360 (Fed. Cir. 2017). Failure to satisfy any statutory requirement requires a finding of improper venue. *Id.*

### B. Transfer for Convenience

In patent cases, motions to transfer under 28 U.S.C. § 1404(a) are governed by the law of the regional circuit—here, the Fifth Circuit. *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008). 28 U.S.C. § 1404(a) provides in part that "[f]or the convenience of parties and witnesses, . . . a district court may transfer any civil action to any other district or division where it might have been brought . . . " *Id.* "Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)).

The preliminary question under § 1404(a) is whether a civil action "'might have been brought' in the destination venue." *In re Volkswagen, Inc.*, 545 F.3d 304, 312 (5th Cir. 2008) [hereinafter *Volkswagen II*]. If the destination venue would have been a proper venue, then "[t]he determination of 'convenience' turns on a number of public and private interest factors, none of which can be said to be of dispositive weight." *Action Indus., Inc. v. U.S. Fid. & Guar. Co.*, 358 F.3d 337, 340 (5th Cir. 2004) (footnote omitted). The private interest factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) [hereinafter *Volkswagen I*] (citing *Piper Aircraft Co. v. Reyno*, 454

U.S. 235, 241 n.6 (1982)). The public factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws of the application of foreign law." *Id.* Courts evaluate these factors based on the situation which existed at the time of filing, rather than relying on hindsight knowledge of the defendant's forum preference. *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960).

The moving party has the burden to prove that a case should be transferred for convenience. *Volkswagen II*, 545 F.3d at 314. The burden is not simply that the alternative venue is more convenient, but that it is clearly more convenient. *Id.* at 314–15. While "clearly more convenient" is not the same as the "clear and convincing" standard, the moving party must still show more than a mere preponderance. *Quest NetTech Corp. v. Apple, Inc.*, No. 2:19-cv-118, 2019 WL 6344267, at *7 (E.D. Tex. Nov. 27, 2019). Yet, the Federal Circuit has clarified that, for a court to hold that a factor favors transfer, the movant need not show an individual factor *clearly* favors transfer. *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020).

### III. ANALYSIS

#### A. Venue

##### a. *RingCentral Does Not Reside in the Western District of Texas*

Under the first prong of 28 U.S.C. § 1400(b), a claim for patent infringement must be brought (1) "in the judicial district where the defendant resides." RingCentral resides in Delaware. It is undisputed that venue would be improper as to RingCentral under the first prong of 28 U.S.C. § 1400(b). ECF No. 90 at 6; ECF No. 92 at 2.

Venue hinges on the Court's analysis of the second prong: "where the defendant has

committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b). RingCentral contends that venue is improper in the Western District of Texas ("WDTX"), alleging it has no regular and established place of business in this District, especially at the time when the suit was instituted. ECF 90 at 6–7, 9–10. Marble maintains that the WDTX is an appropriate venue because RingCentral has committed acts of infringement here and has a regular and established place of business in this District. ECF No. 92 at 2–8.

### b.   *RingCentral Has Regular and Established Place of Business in the WDTX*

#### i.   *The Court considers facts alleged in the Amended Complaint even if the facts occurred after the filing of the Original Complaint*

Marble contends that venue is proper because RingCentral entered into a lease agreement for an office space within this District on August 1, 2022. ECF No. 92 at 4. Marble argues that this office space meets the requirements for the second prong of § 1400(b). *Id.* at 2–7. RingCentral argues, *inter alia*, that venue is determined by the situation at the time that the lawsuit was instituted. ECF No. 90 at 5 (citing *Hoffman v. Blaski*, 363 U.S. 335, 343 (1960)). RingCentral argues that because this lawsuit was instituted on March 10, 2022, and RingCentral did not sign a lease for an office space within this District until August 1, 2022, this office space cannot support a finding of proper venue within the WDTX. *Id.* at 9–10. As RingCentral puts it, "RingCentral's motion to dismiss turns on a pure question of law: can Marble cure a fatal defect in venue at the time of filing by presenting facts that post-date the filing?" ECF No. 97 at 1. Before addressing the Federal Circuit's requirements for the second prong of § 1400(b), the Court must first determine whether events that occurred after the Original Complaint but before the Amended Complaint can support a finding of proper venue.

RingCentral principally relies on *Hoffman v. Blaski*, 363 U.S. 335 (1960). In *Hoffman*, the Supreme Court considered whether § 1404(a)'s threshold inquiry—whether the case might have

been brought in the transferee forum—could be met by a defendant's waiver of all objections to venue in the transferee forum. *Id.* at 336. In one of the cases resolved in *Hoffman*, the plaintiffs filed the action in the Northern District of Texas, where the defendant was incorporated and maintained its only place of business. *Id.* The defendant moved to transfer the case to the Northern District of Illinois, where the plaintiffs resided. *Id.* In the motion to transfer, the defendant stated that it waived all objections to venue in the Northern District of Illinois. *Id.* at 336 n.2. The Supreme Court concluded that § 1404(a)'s phrase "where it might have been brought" requires a court to consider "the situation which existed when suit was instituted." *Id.* at 343 (quoting *Paramount Pictures, Inc. v. Rodney*, 186 F.2d 111, 119 (3rd Cir. 1950) (Hastie, J., dissenting)). The Court explained that "the power of a District Court under § 1404(a) to transfer an action to another district is made to depend not upon the wish or waiver of the defendant but, rather, upon whether the transferee district was one in which the action 'might have been brought' by the plaintiff." *Id.* at 343−44. RingCentral argues that the analysis of whether venue is proper under § 1400(b) must also consider only "the situation which existed when suit was instituted." ECF No. 90 at 5.

To support its argument that post-filing facts can be considered under venue analysis, Marble cites *In re Samsung Electronics Co., Ltd.*, 2 F.4th 1371 (Fed. Cir. 2021). On petitions for writs of mandamus in two related cases, the Federal Circuit in *In re Samsung* considered whether facts alleged in amended complaints should be considered in the venue inquiry. *Id.* at 1376. In these cases, the patentee argued that § 1404(a)'s threshold inquiry—whether the cases might have been brought in the transferee forum—should be determined by facts alleged in the original complaints, not the amended complaints. *Id.* The Federal Circuit rejected this argument. *Id.* The court held that "[o]nce the [patentee] filed their amended complaints, the original complaints, were

'dead letter[s]' and 'no longer perform[ed] any function in the case[s].'" *Id.* (quoting *ConnectU LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008)). The Federal Circuit concluded that the Supreme Court's ruling in *Hoffman* does not support a different holding. *Id.* The Federal Circuit explained that the ruling in *Hoffman* "interpreted [§ 1404(a)] to bar a defendant from creating venue in a new district 'between the bringing of the action and the filing of a motion to transfer it.'" *Id.* (citing *Hoffman*, 363 U.S. at 342). The Federal Circuit in *In re Samsung* concluded that *Hoffman* "did not involve or address the filing of an amended complaint." *Id.* The Federal Circuit stated: "We are unaware of any instance, and none has been called to our attention, in which a court has denied transfer based on the original complaint despite an amended complaint establishing proper venue." *Id.*

The issue before the Court here admittedly differs from the issue faced in *In re Samsung*. In *In re Samsung*, the Federal Circuit only considered whether facts alleged in the amended complaint, but not alleged in the original complaint, could be considered under the threshold inquiry under § 1404(a). *Id.* at 1376. Here, the question is whether facts that were alleged in an amended complaint *and* occurred after the filing of original complaint should be considered in the venue analysis under § 1400(b). While *In re Samsung* does not address this issue precisely, the Court is persuaded that the analysis of the threshold inquiry under § 1404(a) and the venue analysis under § 1400(b) are analogous. The analysis of whether a case "might have been brought" in a district under § 1404(a) should reflect the analysis of whether a case was properly brought in a district under § 1400(b). *See Van Dusen v. Barrack*, 376 U.S. 612, 622, 624 (1964) (explaining that "where it might have been brought" within § 1404(a) reflects federal venue statutes, including § 1400(b)). Further, the Federal Circuit's holding in *In re Samsung* does not suggest that facts relevant to the venue inquiry alleged in the amended complaint must have taken place before the

filing of the original complaint. Thus, because the Federal Circuit determined that facts alleged in an amended complaint apply to determine whether a case "might have been brought" in the transferee forum under § 1404(a), the Court believes that facts alleged in an amended complaint should apply to determine whether venue is proper under § 1400(b).

The Court now considers whether RingCentral's Austin office meets the following requirements of a "regular and established place of business" under the second prong of § 1400(b): (1) "a physical place in the district"; (2) "a regular and established place of business"; and (3) "the place of the defendant." *In re Cray*, 871 F.3d at 1360.

### ii. *RingCentral's Austin office is a physical place in this District*

The first *Cray* element requires "a physical, geographic location in the district from which the business of the defendant is carried out." *Id.* at 1362. The "physical place" does not have to be a "formal office or store." *In re Cordis Corp.*, 769 F.2d 733, 737 (Fed. Cir. 1985).

There is no dispute that the first *Cray* element, "a physical place in the district," is satisfied with RingCentral's office space in Austin. RingCentral has a lease for a particular physical location in this District. ECF No. 59-2 at 25:18-19. RingCentral offers this space for employees "to drop in as needed to meet with customers [or] do their work if they don't have an appropriate home working condition." *Id.* at 26:3-6. While RingCentral notes that this rental is a "shared-office space," ECF No. 97 at 3, it still is a physical, geographic location in the district from which RingCentral's business is carried out. Thus, the Court determines that this *Cray* element is met.

### iii. *RingCentral's Austin office is a regular and established place of business*

The second *Cray* element requires a regular and established place of business. *In re Cray*, 871 F.3d at 1362. The Federal Circuit has concluded that for a business to be "regular and established" it must be operated in a "'steady[,] uniform[,] orderly[, and] methodical' manner." *Id.* at 1362. "[S]poradic activity cannot create venue." *Id.* A business is not "regular" if it operates on

a temporary basis. *Id.* A business is not "established" if it is merely transient. *Id.* To determine whether a business is "temporary" or "transient," the Federal Circuit has created a spectrum. *Id.* at 1363. On one end of the spectrum is *Knapp-Monarch Co. v. Casco Products Corp.*, where the court determined that a rented space at a semiannual trade show was not "regular and established." 342 F.2d 622, 625 (7th Cir. 1965). On the other end of the spectrum is *Remington Rand Business Services v. Acme Card System Co.*, where the court determined that an office that had been continuously operated for five years in a district was "regular and established." 71 F.2d 628, 629 (4th Cir. 1934). This Court has previously determined that a membership to a co-working space did not qualify as a regular and established place of business. *GreatGigz Solutions, LLC v. Maplebear Inc.*, No. 6:20-cv-00737-ADA, 2021 WL 4691145, at *2 (W.D. Tex. Oct. 6, 2021).

RingCentral argues that its Austin office space is not "regular and established" because it has only held the lease to this space since August 1, 2022. ECF No. 97 at 4. Further, the lease was only for six months. *Id.* RingCentral claims that this space is "temporary." *Id.* In response, Marble argues that RingCentral office space is "regular and established" because it is "permanent" and RingCentral has an option to continue the lease indefinitely. ECF No. 92 at 4−5.

The Court concludes that RingCentral's Austin office space is "regular and established." While this Court has previously determined that a membership to a co-working space does not qualify as a regular and established place of business, *GreatGigz*, 2021 WL 4691145, at *2, the Court believes that the conditions of RingCentral's lease differ from the co-working space membership in *GreatGigz*. In *GreatGigz*, the co-working membership merely allowed the defendant's employees to use the co-working space's services, including shared office spaces and member-only events. *GreatGigz Solutions, LLC v. Maplebear Inc.*, No. 6:20-cv-00737-ADA (W.D. Tex. Oct. 27, 2020), ECF No. 11. Here, RingCentral's lease agreement appears to be a

traditional lease; the agreement leases a particular office suite for RingCentral's use. ECF No. 59-3. This lease remains in effect for at least six months and continues indefinitely until either party terminates the agreement. *Id.* Although RingCentral claims that this office is temporary, it has been using this office space since approximately August 1, 2022. *Id.*; ECF No. 59-2 at 27:6-13 (explaining that RingCentral employees began using the office space weeks before the deposition taken on August 26, 2022). Further, RingCentral has solicited employees specifically in this District. ECF Nos. 60-3, 60-4. While RingCentral's business is not as "regular and established" as the five-year continuous presence in *Remington Rand*, the Court believes that RingCentral's place of business in this District looks more like five-year presence in *Remington Rand* than the semiannual trade show in *Knapp-Monarch Co.*

### iv.   *RingCentral's Austin office is a place of the defendant*

The third *Cray* element requires that the place be "of the defendant." *In re Cray*, 871 F.3d 1355 at 1363. The location "must be *of the defendant*, not solely a place of the defendant's employee." *Id.* (emphasis in original). "[T]he defendant must establish or ratify the place of business." *Id.* The Federal Circuit has explained that relevant considerations for this element are whether the defendant owns, leases, or exercises possession or control over the place; whether the defendant conditioned employment on an employee's residence in a district; whether materials are stored or distributed from the place; whether the defendant lists the alleged place of business on a website or directory; and whether the defendant places its name on a sign at the location. *Id.* at 1363−64. But the Federal Circuit has clarified: "[T]he mere fact that a defendant has advertised that it has a place of business or has even set up an office is not sufficient; the defendant must actually engage in business from that location." *Id.* at 1364.

RingCentral argues that its Austin office space is not a "place of the defendant" because it is not listed on RingCentral's website, in a telephone directory, or identified by a RingCentral sign

at the location. ECF No. 97 at 4. RingCentral argues that its Austin office space, which supports eleven employees, is quite different from RingCentral's NDCA offices, which support 670 employees. *Id.* Marble argues that RingCentral's Austin office is a "place of the defendant" because RingCentral maintains the lease to the property. ECF No. 92 at 6. Further, RingCentral selected the location and contracted to give at least eleven employees access to the office space. *Id.* RingCentral also conducts business at this location. *Id.* at 7; ECF No. 59-2 at 26:1-9, 29:10-13 (explaining that the office is intended for employees to use to "meet with customers [or] do their work if they don't have an appropriate home working condition" and employees have used the office for this purpose).

The Court finds that RingCentral's Austin office is a place of the defendant. RingCentral selected the office space to lease, entered into a lease agreement, and has control over whether the office space continues to be leased. Further, RingCentral uses the office space to engage in its business. While RingCentral does not advertise this office on its website or in a telephone directory, the Court is satisfied that it is "of the defendant" because RingCentral itself leased the property and RingCentral's employees actually engage in business from that location.

Because the Court determines that RingCentral's Austin office meets all of the requirements of the second prong of § 1400(b), the Court denies RingCentral's Motion to Dismiss for Improper Venue. The Court now turns to RingCentral's Alternative Motion to Transfer for Convenience to the NDCA.

### B.  Transfer for Convenience

#### a.  *Threshold Inquiry*

The threshold determination in the § 1404(a) analysis is whether this case could initially have been brought in the destination venue—the NDCA. RingCentral argues that the threshold

determination is met, and Marble does not dispute this issue. ECF No. 90 at 11; ECF No. 92. Because RingCentral has a regular and established place of business in the NDCA and acts of infringement were committed in that district, the Court concludes that this action could have been brought in the NDCA. The Court now analyzes the private and public interest factors to determine whether the NDCA is a clearly more convenient forum than the WDTX.

### b. Private Interest Factors

#### i. The Cost of Attendance and Convenience for Willing Witnesses

The most important factor in the transfer analysis is the convenience of the witnesses. *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009). According to Fifth Circuit law, if the distance between a current venue and a proposed venue is more than 100 miles, the inconvenience to witnesses increases in direct relationship to the additional distance they must travel if the matter is transferred. *Volkswagen II*, 545 F.3d at 317. But it is unclear when the 100-mile rule applies, as the Federal Circuit has stated that courts should not apply the rule "rigidly" in cases where witnesses would be required to travel a significant distance no matter what venue they testify in. *In re Apple*, 979 F.3d at 1342 (discussing witnesses traveling from New York) (citing *Volkswagen II*, 545 F.3d at 317). "[T]he inquiry should focus on the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, No. 2021-170, 2021 WL 4427899, at *4 (Fed. Cir. Sept. 27, 2021). According to the Federal Circuit, time is a more important metric than distance. *Id.* However, the Federal Circuit has also held that when willing witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342.

When analyzing this factor, the Court should consider all potential witnesses. *Alacritech Inc. v. CenturyLink, Inc.*, No. 2:16-CV-00693, 2017 WL 4155236, at *5 (E.D. Tex. Sept. 19, 2017).

RingCentral argues that this factor weighs in favor of transfer because most of its witnesses are located in the NDCA. ECF No. 90 at 14. ███████████████████████████ ██████████████████████████████████████████████████████████ ██████████████████████ *Id.* at 11. RingCentral argues that two of its NDCA-based employees are most likely to testify at trial: ██████████████████████████████ ██████████████████████ both Assistant Vice Presidents of Global Partner Success and are "knowledgeable about RingCentral's relationship with Mitel," which is at issue in this case. *Id.* RingCentral further argues that its entire executive leadership team is located in the NDCA. *Id.* Additionally, RingCentral claims that any RingCentral employees that do not reside in California would still find the NDCA more convenient because RingCentral employees are required to visit RingCentral's headquarters in the NDCA periodically. *Id.*

In response, Marble notes that at least two RingCentral executives, ████████████ Vice President of Engineering, and ██████████████ a Product Management Executive, are located in the WDTX. ECF No. 92 at 10. ███████████ role involves "managing over 600 engineers" and working on softphone clients, hardphone certifications, backend servers to support cloud PBX functionality, web applications, and the partner deployments with major telephony companies. *Id.* at 11. ███████████ is responsible for product management of global services partners, and he may possess knowledge regarding RingCentral's relationship with Mitel. *Id.* Marble notes that ██ ████████████████████████████████████████████████████████ *Id.* at 10. Marble argues that "dozens of [RingCentral's] management-level employees" reside in the WDTX. *Id.* at 11. Marble specifically notes that ███████████████████████ both Software

Development Engineers, reside in Austin, Texas. *Id.* ██████████ is responsible for system design and development. *Id.* ████████ directs the team responsible for audio processing. *Id.* Marble also notes that ██████████ is a Software Engineering Manager located in the WDTX, who leads the day-to-day phone engineering teams responsible for SIP implementation. *Id.* Additionally, Marble argues that this factor does not weigh against transfer because RingCentral's corporate representatives often travel for work. *Id.* at 12. Lastly, Marble argues that this factor favors transfer because its technical consulting expert is located in this District. *Id.*

For RingCentral's NDCA-based employees, the Court concludes that the presence of at least two relevant RingCentral employees in the NDCA weighs in favor of transfer. RingCentral identifies ████████████████ as relevant party witnesses because they both possess knowledge of RingCentral's relationship with Mitel. Marble does not argue that either of these potential witnesses would be irrelevant at trial. While the Court believes that the testimony of ████████████████ may be duplicative, since RingCentral only claims that they are both knowledgeable regarding RingCentral's relationship with Mitel, the Court weighs the presence of these two individuals in the NDCA in favor of transfer.

While RingCentral also notes that the "bulk" of its engineering, product management, and strategic partnership teams are located in the NDCA, the Court is not persuaded that this shows that the NDCA is a more convenient forum. The inquiry under this factor "should focus on the cost and inconvenience imposed on the *witnesses*." *In re Google*, 2021 WL 4427899, at *4 (emphasis added). Other than ████████████████ RingCentral has not argued that any other NDCA-based employee would testify at trial. And although RingCentral's declarant, Mr. Desai, claims that the "entire executive leadership team" is located in the NDCA, ECF No. 26-2 ¶ 2, the deposition testimony from RingCentral's employees shows that is not the case. One of

RingCentral's declarants, Helen Vu, stated in her deposition that █████████ is an executive residing in the WDTX. ECF No. 59-2 at 66:6-10. Another of RingCentral's employees, Mr. Pabla, confirmed that ████████████████████ are both members of RingCentral's executive team. ECF No. 59-4 at 27:13-24. Further, Marble notes that RingCentral has two other executives that work remotely, one from Nevada and the other from Georgia. ECF No. 92 at 10. Based on the evidence provided, the Court is not convinced that RingCentral's "entire executive leadership team" is based in the NDCA. The Court is also not persuaded that all the RingCentral employees who may testify at trial are based in the NDCA.

As for RingCentral's WDTX-based employees, Marble identifies at least five RingCentral employees in Austin that are relevant to trial. Marble argues that these WDTX-based employees likely possess technical knowledge that is critical to claim construction issues, infringement, and invalidity. ECF No. 92 at 11. Further, Marble argues that one WDTX-based RingCentral employee, █████████ possesses knowledge regarding RingCentral's agreement with Mitel, which is at issue in this case. *Id.* RingCentral does not contest the relevance of any of these employees in its reply. ECF No. 97. The Court concludes that the presence of at least five RingCentral employees based in the WDTX with relevant knowledge weighs against transfer.

The Court rejects RingCentral's argument that the presence of RingCentral employees outside the NDCA does not weigh against transfer because RingCentral employees often visit RingCentral's headquarters in the NDCA. The relevant consideration under this factor is "the cost and inconvenience imposed on the witnesses by requiring them to travel to a distant forum and to be away from their homes and work for an extended period of time." *In re Google, LLC*, 2021 WL 4427899, at *4. If a WDTX-based witness is called to testify in the NDCA, the witness will be required to travel to a distant forum and to be away from their homes for an extended period of

time. Whether RingCentral's employees often visit the NDCA does not change the analysis of this factor. For a similar reason, the Court rejects Marble's argument that this factor does not weigh in favor of transfer because RingCentral's corporate representatives stated that they often travel for work. Even if RingCentral's corporate representatives often travel for work, they will still face significant cost and inconvenience if they are required to testify in a distant forum.

Lastly, the Court affords little weight to the presence of Marble's technical expert in the WDTX. *Fletcher v. Southern Pacific Transp. Co.*, 648 F. Supp. 1400, 1403 (E.D. Tex. 1986) (quoting *Gdovin v. Catawbal Rental Co.*, 596 F. Supp. 1325, 1327 (N.D. Ohio 1984)) ("It is of little value to this court's determination that plaintiff's expert witness reside in Ohio; even were this matter to be transferred, expert witnesses could be found and retained in the transferee district.").

Because Marble has identified a greater number of employees in this District with a greater breadth of relevant knowledge than the witnesses in the NDCA identified by RingCentral, the Court concludes that this factor weighs at least slightly against transfer.

### ii.  The Relative Ease of Access to Sources of Proof

"In considering the relative ease of access to proof, a court looks to where documentary evidence, such as documents and physical evidence, is stored." *Fintiv Inc. v. Apple Inc.*, No. 6:18-cv-00372, 2019 WL 4743678, at *2 (W.D. Tex. Sept. 10, 2019). "[T]he question is *relative* ease of access, not *absolute* ease of access." *In re Radmax*, 720 F.3d 285, 288 (5th Cir. 2013) (emphases in original). "In patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer. Consequently, the place where the defendant's documents are kept weighs in favor of transfer to that location." *In re Apple Inc.*, 979 F.3d at 1340 (citing *In re Genentech*, 566 F.3d at 1345).

RingCentral argues that this factor favors transfer because RingCentral's corporate records and documents relating to the accused products are physically located in the NDCA. ECF No. 90 at 11. RingCentral further argues that any electronic documents are created and maintained in the NDCA. *Id.* To support these arguments, RingCentral cites one of its declarants, Mr. Desai, who states, "RingCentral's physical and electronic documents relevant to RingCentral MVP and RingCentral Video were created and maintained primarily by RingCentral custodians in Belmont." ECF No. 26-2 ¶ 4. RingCentral further argues that if source code is relevant, engineers from its headquarters in the NDCA will be required to identify the relevant code and to make the code available securely. ECF No. 90 at 12.

In response, Marble argues that RingCentral does not show that relevant documents could not be obtained in the WDTX. ECF No. 92 at 9. Marble further argues that RingCentral's electronic documents are easily accessible from either district. *Id.* In its reply, RingCentral argues that there is significantly more physical evidence in the NDCA than the WDTX. ECF No. 97 at 5. RingCentral argues that, at most, Marble points to documents from ABP International, a third-party entity discussed in more detail in the following section. *Id.*

The Court acknowledges that the Fifth Circuit's decision in *In re Planned Parenthood* indicates a shift in the analysis of this factor. The Fifth Circuit has recently agreed with a district court that concluded that this factor is neutral because electronic evidence is equally accessible in either forum. *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th 625, 630 (5th Cir. 2022). The Fifth Circuit held that "[t]he location of evidence bears much more strongly on the transfer analysis when . . . the evidence is physical in nature." *Id.* But the Federal Circuit has held that it is an error to conclude this factor is neutral because electronic documents are easily accessible in both forums. *In re Apple, Inc.*, No. 2022-128, 2022 WL 1196768, at *4 (Fed. Cir. Apr. 22, 2022). To the extent

that these two holdings can be reconciled, the Court concludes that the location of physical evidence is more important to this analysis than the location of where electronic documents are typically accessed. However, the Court still considers the location of custodians of electronic documents in its analysis of this factor. *In re Google LLC*, No. 2021-178, 2021 WL 5292267, at *2 (Fed. Cir. Nov. 15, 2021).

For RingCentral's physical evidence, the Court is not persuaded that this evidence weighs in favor of transfer. While RingCentral claims that all of its physical records and documents are located in the NDCA, RingCentral fails to identify any *specific* physical evidence that is likely needed at trial. As this Court has explained: "To properly consider this factor, parties must 'describe with specificity the evidence they would not be able to obtain if trial were held in the [alternate forum]." *ParkerVision, Inc v. Intel Corp.*, No. 6:20-cv-00108-ADA, 2021 WL 401989, at *2 (W.D. Tex. Jan. 26, 2021). While RingCentral's physical documents may all be located in the NDCA, the Court is unsure whether any of these physical documents will be needed at trial. Thus, RingCentral's physical documents in the NDCA do not weigh heavily on the outcome of this factor.

RingCentral also claims that any of its electronic documents are also created and maintained in the NDCA. ECF No. 90. However, RingCentral's declarant, Mr. Desai, only states that RingCentral's "electronic documents relevant to RingCentral MVP and RingCentral Video were created and are maintained *primarily* by RingCentral custodians in Belmont." ECF No. 26-2 ¶ 4 (emphasis added). As discussed above, RingCentral has employees in and near this District, including at least five employees that may possess relevant knowledge for trial. *Supra* Section III(B)(b)(i). While the Court acknowledges that RingCentral's electronic evidence may be primarily created and maintained in the NDCA because "[m]ost of the development and

engineering of RingCentral MVP and RingCentral Video" take place in that district, ECF No. 26-2 ¶ 2, the Court believes that it is likely that some of the relevant electronic evidence is also created and maintained by RingCentral's employees in or near the WDTX. Further, as RingCentral notes, the third-party ABP International may also possess sources of proof near this District.

Lastly, the Court considers RingCentral's source code. RingCentral's declarant, Mr. Desai, claims that engineers from RingCentral's headquarters are necessary to identify source code and make code available securely. ECF No. 26-2 ¶ 5. Marble does not argue that RingCentral's source code is irrelevant or that review of RingCentral's source code would not require a RingCentral engineer from RingCentral's headquarters. Based on the evidence provided, the Court finds that RingCentral's source code likely weighs in favor of transfer.

For the foregoing reasons, the Court concludes that this factor weighs at least slightly in favor of transfer.

> iii. *The Availability of the Compulsory Process to Secure the Attendance of Witnesses*

Under the Federal Rules, a court may subpoena a witness to attend trial only (a) "within 100 miles of where the person resides, is employed, or regularly transacts business in person"; or (b) "within the state where the person resides, is employed, or regularly transacts business in person, if the person . . . is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1)(A), (B)(ii). Under this factor, the Court focuses on non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor "weigh[s] heavily in favor of transfer when more third-party witnesses reside within the transferee venue than reside in the transferor venue." *In re Apple*, 581 F. App'x 886, 889 (Fed. Cir. 2014) (citing *In re Genentech*, 566 F.3d at 1345). The Federal Circuit has held that "when there is no indication that a non-party witness is willing,

the witness is presumed to be unwilling and considered under the compulsory process factor." *In re HP Inc.*, 2018 WL 4692486, at *3 n.1. However, the Fifth Circuit has clarified that "the availability of the compulsory process 'receives less weight when it has not been alleged or shown that any witness would be unwilling to testify.'" *In re Planned Parenthood Fed'n of Am., Inc.*, 52 F.4th at 630−31 (quoting *Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488 (6th Cir. 2016)).

RingCentral argues that this factor favors transfer because two of the named inventors, Messrs. Kandlur and Mahadevan, reside within the subpoena power of the NDCA and no inventor is within the subpoena power of this Court. ECF No. 90 at 12−14. In response, Marble argues that RingCentral has make "no showing as to why the testimony of all five inventors will be necessary." ECF No. 92 at 13. Marble further argues that the remaining three New York-based inventors would find this District more convenient because New York is significantly closer to Waco than San Francisco. *Id.* Further, Marble argues that a third-party services provider, ABP International, is located within the subpoena power of this Court. *Id.* at 14. Marble explains that ABP International distributes VoIP products, *Id.*, and ABP International maintains an agreement with RingCentral, ECF No. 59-12. Marble states that it intends to depose ABP International's president, Robert Messer, who resides in Dallas. *Id.*

The Court believes that the two NDCA-based inventors, Messrs. Kandlur and Mahadevan, weigh in favor of transfer. As this Court has explained, "an inventor's testimony will likely be highly relevant and material at trial." *Intell. Ventures I LLC v. Gen. Motors Co.*, No. 6:21-CV-01088-ADA, 2022 WL 16924468, at *9 (W.D. Tex. Nov. 1, 2022). When comparing the subpoena powers of the NDCA and the WDTX, the NDCA has the power to subpoena Messrs. Kandlur and

Mahadevan; the WDTX has no authority to subpoena any of the named inventors. Thus, the Court finds that the presence of these two inventors in the NDCA weighs in favor of transfer.

The Court rejects Marble's argument that this factor weighs against transfer because three inventors reside in New York and New York is closer to this District than the NDCA. First, the compulsory process factor considers non-party witnesses whose attendance may need to be secured by a court order. *Fintiv Inc.*, 2019 WL 4743678, at *14 (citing *Volkswagen II*, 545 F.3d at 316). This factor concerns whether a non-party witness falls under the subpoena power of either forum, rather than the relative convenience of each forum for the non-party witness. Further, assuming, *in arguendo*, that the convenience of unwilling witnesses is relevant to this factor, the Federal Circuit has explained that when witnesses will have to travel a significant distance to either forum, the slight inconvenience of one forum in comparison to the other should not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1342 (discussing witnesses in New York). The three inventors in New York would have to travel a significant distance to either forum and thus, their convenience, even if relevant to the analysis of this factor, should not weigh heavily on the outcome.

With respect to ABP International, the Court believes the presence of this distributor in Texas weighs against transfer. Marble has stated that RingCentral maintains an agreement with ABP International for distribution of VoIP products. Further, Marble intends to depose ABP International's president. ECF No. 92 at 14. RingCentral does not contest the relevancy of this third party. ABP International's president may testify at trial regarding the distribution and sales of the accused products. Other individuals from ABP International may also be relevant.

Because third party witnesses are located in both districts, the Court finds that this factor is neutral.

22

> iv. *All Other Practical Problems That Make Trial of a Case Easy,*
> *Expeditious, and Inexpensive*

When considering the private interest factors, courts must also consider "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Volkswagen II*, 545 F.3d at 314. "Particularly, the existence of duplicative suits involving the same or similar issues may create practical difficulties that will weigh heavily in favor or against transfer." *PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11-cv-655, 2013 WL 9600333, at *5 (E.D. Tex. Mar. 21, 2013). "[W]here there is a co-pending litigation before the trial court involving the same patent-in-suit, and pertaining to the same underlying technology and accusing similar services, [the Federal Circuit] cannot say the trial court clearly [abuses] its discretion in denying transfer." *In re Vistaprint Ltd.*, 628 F.3d 1342, 1346 n.3 (Fed. Cir. 2010).

RingCentral argues that this factor is neutral because no significant steps have been taken in this case. ECF No. 90 at 14. Marble argues that this factor weighs against transfer because of a co-pending case in this District, *Marble VoIP Partners LLC v. Microsoft Corporation*, No. 6:22-cv-00076-ADA (W.D. Tex.). ECF No. 92 at 14. Marble argues that there will be overlapping issues that would be more efficiently handled if this case remained in this Court. *Id.*

The Court notes that *Marble VoIP Partners LLC v. Microsoft Corporation* has been stayed pending settlement since May 6, 2022. *Marble VoIP Partners LLC v. Microsoft Corp.*, No. 6:22-cv-00076-ADA (W.D. Tex. May 6, 2022), ECF No. 17. The case has not yet reached the *Markman* hearing. However, the Court notes that the case has been stayed pending settlement for over a year and the parties have yet to reach a settlement agreement. The parties most recently notified the Court on May 4, 2023, that they "are continuing due diligence efforts, and settlement negotiations are ongoing." *Id.* at ECF No. 28. While that case may still settle, because the parties have been attempting to settle for a significant period of time, the Court agrees with Marble that there is a

chance that there will be overlapping issues between this case and *Marble VoIP Partners LLC v. Microsoft Corporation*. Judicial economy would be best served by maintaining both actions in the same court. For that reason, the Court concludes that this factor weighs slightly against transfer.

### c. *Public Interest Factors*

#### i. *Administrative Difficulties Flowing from Court Congestion*

This factor concerns "whether there is an appreciable difference in docket congestion between the two forums." *In re Adobe Inc.*, 823 Fed. App'x 929, 932 (Fed. Cir. 2020). It considers the "[t]he speed with which a case can come to trial and be resolved." *In re Genentech, Inc.*, 566 F.3d at 1347. In this analysis, court congestion is considered "the most speculative" factor, and when "relevant factors weigh in favor of transfer and others are neutral, then the speed of the transferee district court should not alone outweigh all those other factors." *Id.*

RingCentral argues that this factor is neutral because the Federal Circuit has cautioned against placing significant weight on this factor. ECF No. 90 at 15 (citing *In re Juniper Networks, Inc.*, 14 F.4th 1313, 1317 (Fed. Cir. 2021)). Marble argues that this factor weighs against transfer because time to trial is faster in this District than the NDCA. ECF No. 92 at 14.

The Court notes that the Federal Circuit recently concluded that this factor should not weigh against transfer when the plaintiff "is not engaged in product competition in the marketplace and is not threatened in the market in a way that, in other patent cases, might add urgency to case resolution." *In re Google LLC*, 58 F.4th 1379, 1383 (Fed. Cir. 2023). Here, Marble has expressly stated that it "is a small, non-practicing entity." ECF No. 92 at 2. Because Marble likely does not engage in product competition in the marketplace, the Court believes that this factor is likely neutral under the Federal Circuit's latest guidance.

*ii. Local Interest in Having Localized Interests Decided at Home*

Under this factor, the Court must evaluate whether there is a local interest in deciding local issues at home. *Volkswagen II*, 545 F.3d at 317. Local interests in patent cases "are not a fiction." *In re Samsung Elecs. Co.*, 2 F.4th 1371, 1380 (Fed. Cir. 2021). "A local interest is demonstrated by a relevant factual connection between the events and the venue." *Word to Info, Inc. v. Facebook, Inc.*, No. 3:14-CV-04387-K, 2015 WL 13870507, at *4 (N.D. Tex. Jul. 23, 2015). "[T]he sale of an accused product offered nationwide does not give rise to a substantial interest in any single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). "This factor most notably regards not merely the parties' significant connections to each forum writ large, but rather the 'significant connections between a particular venue and *the events that gave rise to a suit*.'" *In re Apple*, 979 F.3d at 1344 (emphasis in original) (quoting *In re Acer Am. Corp.*, 626 F.3d 1252, 1256 (Fed. Cir. 2010)). Courts should not heavily weigh a party's general contacts with a forum that are untethered from the lawsuit, such as a general presence. *Id.* Moreover, "little or no weight should be accorded to a party's 'recent and ephemeral' presence in the transferor forum, such as by establishing an office in order to claim a presence in the district for purposes of litigation." *In re Juniper Networks, Inc.*, 14 F.4th at 1320 (quoting *In re Microsoft Corp.*, 630 F.3d 1361, 1365 (Fed. Cir. 2011)). To determine which district has the stronger local interest, the Court looks to where the events forming the basis for infringement occurred. *Id.* at 1319.

RingCentral argues that this factor favors transfer because the NDCA "has a particularized interest in hearing infringement allegations against local residents such as RingCentral." ECF No. 90 at 15. RingCentral argues that this Court has no interest in resolving this matter because Marble is based in the EDTX and RingCentral is based in the NDCA. *Id.* In response, Marble argues that this factor does not weigh in favor of transfer because RingCentral customers use the product in

both districts. ECF No. 92 at 15. Further, Marble argues that this Court has an interest in the enforcement of patent rights held by a Texas-based company. *Id.*

The Court finds that this factor weighs slightly in favor of transfer. The relevant inquiry under this factor is whether there is a factual connection between the forum and the events that gave rise to the suit. *Word to Info*, 2015 WL 13870507, at *4. RingCentral's general presence in the NDCA does not weigh heavily on the outcome of this factor. *In re Apple*, 979 F.3d at 1344 ("The district court thus misapplied the law to the facts by so heavily weighing [defendant]'s general contacts with the forum that are untethered to the lawsuit."). The Court must instead consider where the accused products were designed and developed and whether the lawsuit "calls into question the work and reputation" of individuals residing in either forum. *Id.* Here, the Court acknowledges that RingCentral claims "[m]ost of the development and engineering of RingCentral MVP and RingCentral Video" takes place in the NDCA. ECF No. 26-2 ¶ 2. However, the Court notes that RingCentral has ███ employees within the WDTX, at least five of which may possess knowledge relevant for trial. ECF No. 92 at 10; *supra* Section III(B)(b)(i). Thus, while this case likely calls into question the work and reputation of individuals in the NDCA, it also calls into question the work and reputation of individuals in the WDTX.

The Court rejects Marble's argument that this factor weighs against transfer because Marble is a Texas company. As the Federal Circuit has explained, when a party is located in the EDTX, it does not give this District a comparable local interest. *In re Apple, Inc.*, No. 2022-137, 2022 WL 1676400, at *2 (Fed. Cir. May 26, 2022). Thus, Marble's presence in Texas does not weigh against transfer under this factor.

For the foregoing reasons, the Court finds that this factor weighs slightly in favor of transfer.

<em>iii.  Familiarity of the Forum with the Law that Will Govern the Case</em>

The parties agree that this factor is neutral; both forums are familiar with the law that will govern this case. ECF No. 90 at 15; ECF No. 92 at 15. The Court agrees.

<em>iv.  Avoidance of Unnecessary Problems of Conflict of Laws or in the<br>Application of Foreign Law</em>

The parties agree that this factor is neutral—there are no potential conflicts here. ECF No. 90 at 15; ECF No. 92 at 15. The Court agrees.

### d.  Conclusion

Having considered the private and public interest factors, the Court finds two factors at least slightly favor transfer to the NDCA, two factors slightly disfavors transfer, and four factors are neutral. A decision to uproot litigation and transfer is not the consequence of a simple math problem. Instead, a moving party must show that the transferee forum is a clearly more convenient forum. Here, the sources of proof and the local interest factors slightly favor transfer. But the willing witness factor, which the Federal Circuit has denoted as the most important, *In re Genentech*, 566 F.3d at 1373, and the practical problems factor weigh slightly against transfer. The Court finds that RingCentral has failed to meet its burden of showing that the NDCA is a *clearly* more convenient forum. The Court's conclusions for each factor are summarized in the following table:

| Factor | The Court's Finding |
|---|---|
| Relative ease of access to sources of proof | Slightly favors transfer |
| Cost of attendance for willing witnesses | Slightly against transfer |
| Availability of compulsory process to secure the attendance of witnesses | Neutral |
| All other practical problems that make trial of a case easy, expeditious and inexpensive | Slightly against transfer |
| Administrative difficulties flowing from court congestion | Neutral |
| Local interest | Slightly favors transfer |
| Familiarity of the forum with law that will govern case | Neutral |
| Problems associated with conflict of law | Neutral |

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion to Dismiss Plaintiff's Amended Complaint for Improper Venue (ECF No. 90). The Court further **DENIES** Defendant's Alternative Motion to Transfer to the Northern District of California (ECF No. 90).

**SIGNED** this 31st day of May, 2023.

ALAN D ALBRIGHT
UNITED STATES DISTRICT JUDGE